# Louisville & Nashville Railroad Co. v. Kelsey.

*Action for Damages for Killing Horse.*

1. *Contributory negligence; when not proximate.*—The plaintiff's horse, for the killing of which by defendant's train of cars the action is brought, having escaped from the car in which he was being transported, ran several miles along a public road, until it intersected the railroad track, and up the railroad track for nearly a mile, when it was overtaken by another train of cars, run over and killed; the fact that it escaped from the car through the negligence of the plaintiff himself, who had charge of the car containing his horses, is not the proximate cause of the injury, and does not constitute such contributory negligence as will defeat a recovery.

2. *Measure of damages.*—The cause of action in such case being the negligence which caused the killing of the horse, outside of the contract under which he was being transported, the plaintiff is entitled to recover, if at all, the full value of the animal, and is not limited to the sum stated in the contract as the maximum for which the railroad company would be liable in the event of loss or injury; though the contract of affreightment, containing the limitation as to the liability for loss or damage, is admissible as evidence on the question of value.

3. *Burden of proof.*—It being shown that the animal, for the negligent killing of which the action is brought, was on the railroad track when it was struck and killed (Code, § 1147), the *onus* is on the defendant to acquit itself of the charge of negligence.

APPEAL from the Circuit Court of Montgomery.

Tried before the Hon. JOHN P. HUBBARD.

This action was brought by R. W. Kelsey against the appellant corporation, to recover damages for the killing of a blooded stallion belonging to the plaintiff, by an engine and train of cars belonging to the defendant, and which was alleged to have been caused by the negligence of the defendant's agents and servants in charge of the train. The accident occurred on the 27th February, 1889, and the action was commenced on the 17th April, 1889. The pleas were, not guilty, and contributory negligence; and there were several special pleas which stated the facts constituting the alleged contributory negligence. It appeared on the trial, as the bill of exceptions shows, that the plaintiff's stallion, with nine or ten other horses and mules, was shipped in a car over the defendant's road, from Decatur to Montgomery, the plaintiff himself accompanying them. The animals were placed in a flat box, in which there was only one small window; and in order to afford ventilation, the sliding doors on the side of the car were left partially open, several slats being nailed across the opening. The stallion was fretful and unruly, and before reaching Cullman it was discovered that some of the slats were loose, having been kicked off by the animals, or worked loose by the motion of the cars; and they were again fastened. The train had left Decatur about dark on the 26th February, and on reaching Birmingham, after midnight, it was found that the stallion and three of the mules had escaped from the car. The plaintiff procured a hand-car, and went back up the railroad track in search of them. He found the place at which the stallion had jumped from the car, and followed the tracks through the field, and for several miles along the public road, until it intersected the railroad track; and the tracks showed that he then ran up the track for nearly a mile, when he was overtaken and killed by a train from behind. The contract for the transportation of the stock, which was one of the defendant's printed forms with the blanks filled up, contained a stipulation, or condition, that in the event of injury or damage "the amount claimed shall not exceed, for a stallion or jack, $200"; but the evidence adduced on the trial showed that the stallion "was worth from $1,000 to $1,500."

On these facts, the court charged the jury (1) that, if the plaintiff's horse was injured by another or different train of cars than that on which he was being transported, the plain-

tiff would have the right to recover the value of the animal, though it might exceed $200; (2) that if the horse was found injured under such circumstances as reasonably satisfied the jury that he was killed by a different train than that on which he was being transported, the burden was on the defendant to show that the injury was not caused by negligence. The defendant excepted to each of these charges, and requested the following (with other) charges: (1.) The jury can not, in any event, return a verdict for plaintiff for more than $200. (2.) The burden is on the plaintiff to show, not only that the horse was killed by the defendant's locomotive or cars, but that the injury was negligently inflicted. (3.) If the jury believe from the evidence that the horse escaped from the car by reason of plaintiff's failure to securely bar or tie him in it, and that such failure was negligence on his part; then, if the jury find these facts to exist, the escape of the horse was due to plaintiff's negligence; and if such negligence prevented defendant from performing its contract to deliver said horse to plaintiff at Montgomery, plaintiff can not recover in this case.

The charges given, and the refusal of the several charges asked, are assigned as error.

JONES & FALKNER, for appellant.

A. A. WILEY, contra.

McCLELLAN, J.—Assuming it to be a fact, that the stallion, for the negligent killing of which this action was brought, escaped from a train of the defendant company through the negligence of the plaintiff, we are unable to see any such relation of cause and effect between that fact and the subsequent injury to the animal by another and different train of the defendant, as would avail the defendant under the plea of contributory negligence. The uncontroverted evidence is, that the horse escaped, unhurt, from the car in which he was being transported, went thence a half mile in an easterly direction into a public road, and thence along said road for three miles, back to the railroad at a point where the public road crosses the track. "At this point, the horse turned up the track of defendant's said railroad, and went north about one mile, and the tracks of said horse showed that it was running this distance north on the railroad track;" and at this point, about one mile from the rail-

road crossing, the horse was struck by the locomotive cars of the defendant, constituting a train which was going north, and killed. Under these facts, if the escape of the animal was due to the want of due care and diligence on the part of the owner, his negligence was not the proximate cause of the injury, and will not defeat his right to recover damages which he has sustained thereby. In principle, it must be wholly immaterial whence the escape was effected, whether from the inclosure of the plaintiff, or from the cars of the defendant, where it was the plaintiff's duty to keep the animal securely; nor is it important whether the escape was negligent merely, or affirmatively permissive. However the horse came to be at large, the mere fact that he was allowed to go at large was not the direct, moving and proximate cause of his death; and the fact of negligence *vel non* in allowing him to be at large, is one with which the jury had no concern, since no determination of that issue could have defeated a recovery on the one hand, or increased plaintiff's damages on the other. It was a matter beyond the issue, in other words, and the court properly refused to submit it to the jury in any form.—*S. & N. Ala. R. R. Co. v. Williams*, 60 Ala. 74; *A. G. S. R. R. Co. v. Jones*, 71 Ala. 487; *A. G. S. R. R. Co. v. McAlpine*, 71 Ala. 545.

2. The animal having escaped from the cars, and being at large, the rights of the owner in him, and to be compensated for injuries done to him through the wrong and negligence of others, were precisely the same as if the contract of shipment from Decatur to Montgomery had never existed, and the horse had never been on the defendant's train. The measure of damages was the full value of the property destroyed. That the plaintiff had agreed, in the contract of affreightment, to claim only two hundred dollars for any injuries that might result to the property from any failure of the railway company to discharge and perform the duties imposed upon it by that contract, can exert no influence whatever in determining the amount of the damages to which the plaintiff is entitled for an injury in no wise connected with, or growing out of the contract, and which the plaintiff seeks to recover in an action, not upon, or for a violation of the terms of the contract, but for an entirely independent wrong and injury. That the plaintiff, in that contract, and for the purposes thereof, agreed that two hundred dollars was as much as the animal was reasonably worth, afforded some evidence, to be taken in connection with the circum-

stances under which the contract was entered into, of the value of the horse; and for this purpose it was admitted by the trial court. The court below very properly, we think, declined to accord to this contract any other operation in the case than as furnishing some evidence of an admission on the part of the plaintiff, to the effect that the animal was of less value than that claimed in this action. For this purpose it was competent, but it did not estop the plaintiff to claim as damages whatever the jury, on all the evidence, should find to be the real value of the property.

3. It being shown that the animal, while on the railroad track, was killed by a train of the defendant, the burden was on the defendant to acquit itself of the charge of negligence made by the complaint; and the rulings of the court to this effect were free from error.—Code, §§ 1144, 1147; *Ga. Pac. Railway Co. v. Hughes*, 87 Ala. 610; *S. & N. Ala. R. R. Co. v. Williams, supra.*

Affirmed.